UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KLAUBER BROTHERS, INC.,

                              Plaintiff,

              - against -

M.J.C.L.K., LLC (d/b/a "Badgley Mischka"); SAKS
INCORPORATED; and DOES 1-10,

                              Defendants.

**MEMORANDUM
OPINION & ORDER**

21 Civ. 4523 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

             In this action, Plaintiff Klauber Brothers, Inc. claims that Defendants M.J.C.L.K.,

LLC, Saks Inc., and Doe Defendants infringed its copyright in a particular lace design.  (Am.

Cmplt. (Dkt. No. 22))  Defendants M.J.C.L.K. and Saks moved to dismiss the Amended

Complaint, pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 28)

             On September 30, 2022, this Court issued an order granting Defendants' motion.

(Dkt. No. 33)  The purpose of this memorandum opinion is to explain the Court's reasoning.

## BACKGROUND

I.    **FACTS**[1]

             Klauber Brothers, Inc. is a New York corporation with its principal place of

business in New York.  (Am. Cmplt. (Dkt. No. 22) ¶ 4)  Defendant M.J.C.L.K., LLC – which

does business, and will be referred to herein, as "Badgley Mischka" – is a New York limited

liability company with its principal place of business in New York.  (Id. ¶ 5)  Defendant Saks

Inc. is a Tennessee corporation with its principal place of business in New York.  (Id. ¶ 6)

---

[1]  The facts set forth in this Order are drawn from the Amended Complaint and are presumed true
for purposes of resolving Defendants' motion to dismiss.  See Kassner v. 2nd Ave. Delicatessen
Inc., 496 F.3d 229, 237 (2d Cir. 2007).

The Amended Complaint alleges that, at some unspecified time, Klauber "composed an original two-dimensional artwork for purposes of lace production."  (Id. ¶ 10) Klauber assigned this design (the "Subject Design") internal design number 39092 X.  (Id.) Klauber owns a United States Copyright Registration covering the Subject Design under Registration No. VA 2-125-418.  (Id. ¶ 11)

According to the Amended Complaint, Badgley Mischka, Saks, and others – including the Doe Defendants – "created, sold, manufactured, caused to be manufactured, imported and/or distributed fabric and/or products incorporating fabric that bears artwork identical to or substantially similar to the Subject Design."  (Id. ¶ 15)  Such items include products sold by Saks bearing the Badgley Mischka label.  (Id.)  According to Klauber, a comparison of the Subject Design and exemplars of one of these allegedly infringing products (the "Subject Product") show "that the elements, composition, arrangement, layout, and appearance of the design on the [Subject Product] is substantially similar to the [Subject Design]."  (Id. ¶ 18)

The Subject Design and an exemplar of the Subject Product are depicted below:



| | |
|:---:|:---:|
| **Subject Design** | **Subject Product** |

Klauber alleges that, prior to these infringing acts, (1) Badgley Mischka "had a business relationship with [Klauber], directly accessed [Klauber]'s design library, and received samples of [Klauber]'s designs" (id. ¶ 12); and (2) Klauber "sampled and sold over 23,881 yards of lace bearing the Subject Design to numerous parties in the retail and apparel industries, including many customers in New York City, where Badgley Mischka is located."  (Id. ¶ 13)

## II.    PROCEDURAL HISTORY

The Complaint was filed on May 19, 2021 and asserts claims for direct and indirect infringement against Badgley Mischka, LLC; Saks Inc.; and ten Doe Defendants. (Cmplt. (Dkt. No. 1))  On September 24, 2021 – after Badgley Mischka, LLC and Saks filed a pre-motion letter seeking leave to file a motion to dismiss (see Dkt. No. 17)) – Plaintiff filed an Amended Complaint.  (Am. Cmplt. (Dkt. No. 22))  The Amended Complaint substitutes Badgley

Mischka, LLC for M.J.C.L.K., LLC; M.J.C.L.K., LLC does business as "Badgley Mischka."  (Id. ¶ 5)

On December 3, 2021, Badgley Mischka and Saks (collectively, "Defendants") moved to dismiss the Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6).  (Def. Motion (Dkt. No. 28))  Klauber seeks leave to amend in the event that Defendants' motion is granted. (See Pltf. Opp. (Dkt. No. 32) at 23)[2]

## DISCUSSION

## I.    LEGAL STANDARD

### A.    Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion challenges the legal sufficiency of the claims asserted in a complaint.  "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner, 496 F.3d at 237 (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

Under this standard, a plaintiff is required only to set forth a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft 'to sho[w] that the pleader is entitled to relief.'"  Twombly, 550 U.S. at 557 (alteration in Twombly) (quoting Fed. R. Civ. P. 8(a)(2)).  To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right of relief above the speculative level," id. at 555, and a plaintiff's claims

---

[2]  The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

must be "plausible on [their] face," id. at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. (quoting Twombly, 550 U.S. at 557).  Moreover, where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," Twombly, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed."  Id. at 570.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Iqbal, 556 U.S. at 678 (alteration in Iqbal) (quoting Twombly, 550 U.S. at 557).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citation omitted).

III.   **ANALYSIS**

   A.   **Elements of a Copyright Infringement Claim**

To state a claim for copyright infringement, a plaintiff must allege "(1) ownership of a valid copyright and (2) infringement of the copyright by the defendant."  Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 109-10 (2d Cir. 2001).  To satisfy the second element, a plaintiff must allege that "'(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of the plaintiff's' [work]."  Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 63 (2d Cir. 2010) (quoting Hamil Am. Inc. v. GFI, 193 F.3d 92, 99 (2d Cir. 1999)); see

also Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 131 (2d Cir. 2003) ("To demonstrate unauthorized copying, the plaintiff must first 'show that his work was actually copied'; second he must establish 'substantial similarity' or that the 'copying amounts to an improper or unlawful appropriation,' i.e., (i) that it was protected expression in the earlier work that was copied and (ii) that the amount that was copied is 'more than de minimis.'" (quoting Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc., 150 F.3d 132, 138 (2d Cir. 1998))).

"In the absence of direct evidence, copying is proven by showing '(a) that the defendant had access to the copyrighted work and (b) the substantial similarity of protectible material in the two works.'" Williams v. Crichton, 84 F.3d 581, 587 (2d Cir. 1996) (Kregos v. Associated Press, 3 F.3d 656, 662 (2d Cir. 1993)). "In the alternative, '[i]f the two works are so strikingly similar as to preclude the possibility of independent creation, "copying" may be proved without a showing of access.'" Tisi v. Patrick, 97 F. Supp. 2d 539, 547 (S.D.N.Y. 2000) (quoting Ferguson v. NBC, Inc., 584 F.2d 111, 113 (5th Cir. 1978)). "Once copying has been shown, a plaintiff must still demonstrate 'substantial similarity' between the defendant's work and the protectible elements of plaintiff's work, because 'not all copying results in copyright infringement.'" Gal v. Viacom Int'l, Inc., 518 F. Supp. 2d 526, 537 n.4 (S.D.N.Y. 2007) (quoting Boisson v. Banian, Ltd., 273 F.3d 262, 268 (2d Cir. 2001)).

**B.**    **Whether Klauber Has Adequately Pled Direct Copyright Infringement**

**1.**    **Access**

Defendants argue that Klauber's direct copyright infringement claims should be dismissed because Plaintiff has not pled facts demonstrating that Defendants had access to, and copied, the Subject Design.  (Def. Br. (Dkt. No. 29) at 10-13)

"To establish access, a plaintiff must show that the alleged infringer 'had a reasonable possibility of viewing the prior work.'  Because 'it is rare in a copyright infringement

action for plaintiff to have direct access of the defendant viewing and copying its work, courts have recognized that access may be shown by circumstantial evidence.'" Unicolors, Inc. v. A&M LLC, No. 16CIV6853ATRWL, 2018 WL 11219450, at *2 (S.D.N.Y. Dec. 18, 2018) (quoting Boisson, 273 F.3d at 270; then quoting Gal, 518 F. Supp. 2d at 538).  However, "'[a]ccess must be more than a bare possibility and may not be inferred through speculation or conjecture.'" Polsby v. St. Martin's Press, Inc., No. 97 CIV. 690 (MBM), 1999 WL 225536, at *2 (S.D.N.Y. Apr. 19, 1999), aff'd, 8 F. App'x 90 (2d Cir. 2001) (quoting Gaste v. Kaiserman, 863 F.2d 1061, 1066 (2d Cir.1988)).  "Widespread dissemination" of a copyrighted work can give rise to an inference of access "where the allegedly infringed work has had considerable commercial success or is readily available on the market." Silberstein v. Fox Ent. Grp., Inc., 424 F. Supp. 2d 616, 627 (S.D.N.Y. 2004), aff'd sub nom. Silberstein v. John Does 1-10, 242 F. App'x 720 (2d Cir. 2007) (citing ABKCO Music, Inc. v. Harrisongs Music, Ltd., 722 F.2d 988 (2d Cir.1983)).

Here, this Court concludes that Klauber has not sufficiently alleged that Defendants had access to the Subject Design.

In the Amended Complaint, Klauber alleges that, "[p]rior to the acts complained of herein, beginning in 2016, Plaintiff sampled and sold over 23,881 yards of lace bearing the Subject Design to numerous parties in retail and apparel industries, including many customers in New York City, where Badgley Mischka is located."  (Am. Cmplt. (Dkt. No. 22) ¶ 13)  Klauber argues that the distribution of the design constitutes "widespread dissemination," from which this Court can infer access.  (Pltf. Opp. (Dkt. No. 32) at 10)  Klauber's allegations are insufficient, however, because it has not substantiated its allegations regarding widespread dissemination, or otherwise provided an adequate link between the distribution of the Subject Design and

Defendants.  Indeed, similar allegations have been rejected as insufficient in other copyright actions in this District involving Klauber's lace designs.

In Klauber Brothers, Inc. v. QVC, Inc., Klauber alleged that "'prior to the acts complained of herein, Plaintiff sampled and sold lace bearing [the] Subject Design . . . to numerous parties in the fashion and apparel industries, including garment manufacturers based in New York and/or one or more of the Defendants.'"  Klauber Bros., Inc. v. QVC, Inc., No. 1:19-CV-09321, 2020 WL 7029088, at *8 (S.D.N.Y. Nov. 30, 2020) (alterations added) (citation omitted)).  The court held that Klauber was required to allege "a specific link between the distributed samples or images of a copyright design and the [d]efendants accused of infringing that design."  Id. (citations omitted).  The court noted that Klauber's "allegation does not provide any detail about how much of the lace was sampled or sold, when it was sampled or sold, or, importantly, to whom it was sampled or sold."  Id.  "Without those details," the court concluded that it was "unable to infer, to any degree of plausibility, whether [the d]efendants saw or could have seen the protected designs at or around the time its products were made."  Id. (citation omitted).

In Dress Barn, Inc. v. Klauber Brothers., Inc., the court similarly rejected as insufficient Klauber's allegation that "[p]rior to the acts complained of herein, Klauber sampled and sold lace bearing [the] Subject Design . . . to numerous parties in the fashion and apparel industries, and those sales alone totaled more than 230,000 yards of product bearing [the] Subject Design."  (Dress Barn, Inc. v. Klauber Brothers., Inc., No. 18 Civ. 8085 (DLC) (S.D.N.Y.), Am. Counterclaim (Dkt. No. 25) ¶ 18)  The court found that Klauber "asser[ted] no facts regarding where and when this lace was distributed."  Dress Barn, Inc. v. Klauber Bros., Inc., No. 18CV8085(DLC), 2019 WL 1949675, at *5 (S.D.N.Y. Apr. 22, 2019).  And, while noting that

8

"'[a]ccess may be . . . inferred from the fact that a work was widely disseminated,'" id. (quoting Boisson, 273 F.3d at 270), the court found that Klauber pled "no facts to demonstrate that the hundreds of thousands of yards of lace it 'sampled or sold' constitute widespread dissemination, or occurred before [the defendant] engaged in its allegedly infringing activities." Id.

Likewise, in Klauber Brothers, Inc. v. URBN US Retail LLC, the court found that Klauber had not sufficiently pled access to a particular design.  Klauber alleged that "[p]rior to the acts complained of herein, [Klauber] sampled and sold over 150,052 yards of lace bearing the Subject Design and its related patterns starting in 2008 to numerous parties in the retail and apparel industries, including a sister pattern designated internal design number 3885 featuring the same design elements and motifs as the Subject Design but with other elements or resized elements."  (Klauber Bros, Inc. v. URBN US Retail LLC, No. 21 Civ. 4526 (GHW), Am. Cmplt. (Dkt. No. 40) ¶ 15)  The court found, inter alia, that Klauber had not alleged "any facts to support the inference that such a quantity constitutes widespread dissemination in the relevant market," including whether the design was "commercially successful, readily available, or otherwise likely to be encountered by Defendants."  Klauber Bros, Inc. v. URBN US Retail LLC, No. 21 Civ. 4526 (GHW), 2022 WL 1539905, at *9 (S.D.N.Y. May 14, 2022).  While finding that Klauber had not adequately pled access, the court did rule that Klauber had sufficiently pled actual copying, because the subject design and allegedly infringing design were "strikingly similar."  Id at *8.

Here, as in QVC, Dress Barn, and URBN US Retail, Klauber has not pled sufficient facts to plausibly show a link between the distributed lace and Defendants.  Indeed, Klauber does not specify to whom the lace was distributed, much less any connection between Defendants and known recipients of the lace.  And while Klauber has alleged the general

location where the lace was distributed (New York City), the general time period in which the

lace was distributed ("beginning in 2016"), and the quantity of lace that was distributed (23,881

yards), the Amended Complaint does not allege sufficient facts to support an inference that this

quantity constitutes widespread dissemination in the relevant market.

The other allegations in the Amended Complaint that purport to address

Defendants' access to the Subject Design are likewise insufficient.

While Klauber generally alleges that "Badgley Mischka had a business

relationship with Plaintiff, directly accessed Plaintiff's design library, and received samples of

Plaintiff's designs" (Am. Cmplt. (Dkt. No. 22) ¶ 12), Klauber does not allege that Badgley

Mischka had access to the Subject Design.  Indeed, Klauber does not allege when it had a

business relationship with Badgley Mischka – whether before, during, or after Klauber's creation

and dissemination of the Subject Design – or whether its design library included the Subject

Design when Badgley Mischka had access to the design library.

Klauber alleges, on information and belief, that

> Defendants, and each of them, had access to the Subject Design including,
> without limitation, through (a) access to Plaintiff's showroom and/or design
> library; (b) access to illegally distributed copies of the Subject Design by third-
> party vendors and/or Doe Defendants, including without limitation international
> and/or overseas converters and printing mills; (c) access to Plaintiff's strike-offs
> and samples; and (d) garments manufactured and sold to the public bearing fabric
> lawfully printed with the Subject Design by Plaintiff for its customers.

(Am. Cmplt. (Dkt. No. 22) ¶ 20)  These "information and belief" assertions are not supported by

factual allegations, however.  And in QVC and URBN US Retail, courts rejected identical or

nearly identical "information and belief" allegations, finding that Klauber had "fail[ed] to

provide any actual facts to allow the [c]ourt to infer that any Defendant had access to Plaintiff's

designs," QVC, 2020 WL 7029088, at *9, and provided "nothing more than a generic list of

means by which any infringer might gain access to any fabric design," <u>URBN US Retail</u>, 2022 WL 1539905, at *9.  As in <u>QVC</u> and <u>URBN US Retail</u>, Klauber's "information and belief" allegations here are conclusory and contain no facts specific to Defendants.

Klauber argues, however, that this Court should not rely on <u>QVC</u>, because a motion for reconsideration is pending in that case.  (<u>See</u> Pltf. Opp. (Dkt. No. 32) at 18-19; <u>see</u> <u>QVC</u>, No. 19 Civ. 9321 (MKV) (Dkt. No. 48))  Klauber also cites <u>Klauber Brothers, Inc. v. Jenny Yoo, Inc.</u>, No. 16 Civ. 9260 (LLS), 2017 WL 4082483 (S.D.N.Y. July 18, 2017) for the proposition that Klauber has sufficiently alleged access in the instant case, given that "'discovery is likely to provide many of the details of the allegedly infringing acts and much of this information may be exclusively in defendants' control.'"  (Pltf. Opp. (Dkt. No. 32) at 9 (quoting <u>Jenny Yoo</u>, 2017 WL 4082483, at *4)

In <u>Jenny Yoo</u> – a copyright infringement action premised on a lace design – Klauber alleged that "[p]rior to the acts complained of herein, Plaintiff sampled and sold lace bearing the Subject Design to numerous parties in the fashion and apparel industries."  (<u>Jenny Yoo</u>, No. 16 Civ. 9260 (LLS), Cmplt. (Dkt. No. 1) ¶ 12)  The court found that this allegation – combined with general allegations that the defendants had access to Klauber's showroom/design library, unlawfully distributed copies by unnamed third-party vendors, and lace distributed by Klauber – was sufficient to plead access, given that discovery had not yet begun.  See <u>Jenny Yoo</u>, 2017 WL 4082483 at *4.

This Court finds the analysis in <u>Dress Barn</u>, <u>QVC</u>, and <u>URBN US Retail</u> to be more persuasive than the analysis in <u>Jenny Yoo</u>.  Klauber's allegations lack sufficient factual detail to raise a non-speculative inference that the Defendants had access to the Subject Design.[3]

## 2.     Striking Similarity

Klauber argues that – even if its access allegations are insufficient – it has adequately alleged actual copying because the Subject Design and the Subject Product are "strikingly similar."  (Pltf. Opp. (Dkt. No. 32) at 10-11)  In the Amended Complaint, Klauber points to the following similarities between the Subject Design and Subject Product, as illustrated by an accompanying side-by-side visual comparison:  (1) the "same diamond inside diamonds with similar fillings"; (2) the "same overall geometric patterns in similar arrangement"; and (3) the "same arrangement of curlicues."  (Am. Cmplt. (Dkt. No. 22) ¶ 17 (capitalization omitted))

---

[3]  Klauber contends that "most of the 'access' evidence is in Defendants' exclusive control." (Pltf. Opp. (Dkt. No. 32) at 9)  To the extent that Badgley Mischka had access to the Subject Design as a result of its business relationship with Klauber, however (<u>see</u> Am. Cmplt. (Dkt. No. 22) ¶ 12), Klauber has not explained why it lacks information concerning the nature, timing, and duration of that relationship, and whether the Subject Design was in Klauber's design library at the time Badgley Mischka allegedly accessed the library.



| **Subject Design** | **Subject Product** |

(Id.)

        Defendants argue that Klauber has not shown that the Subject Design and Subject

Product are "substantially similar," much less met the higher standard of "striking similarity."

(Def. Reply Br. (Dkt. No. 30) at 9-12)  In response to the similarities cited in the Amended

Complaint, Defendants list several differences between the Subject Design and the Subject

Product, including the following:

- "The Subject Design's diamond patterns are concave (curved inward), while the Subject Product's diamond patterns are convex (curved outward) and contain two leaves, one on each side of the diamond motifs, which are absent from the Subject Design.  The Subject Design's diamond pattern has a scrolling pattern running through the middle of it; the Subject Product's diamond pattern lacks the scrolling pattern.  The Subject Design has thinner lines, and [a different number of threads than the Subject Product]" (Def. Br. (Dkt. No. 29) at 16-17);

- Elements within the purportedly similar geometric arrangement are arranged differently, with certain elements spaced differently, curved differently, or intertwined with different shapes or patterns (id. at 17-18); and

- The purportedly similar arrangement of curlicues contains a different number of "scrolls" in the Subject Design and the Subject Product (id. at 18-19).

        Defendants also list other "significant differences" between the Subject Design

and the Product Design, including that (1) "the relationship and distance between the fan motifs

and the diamond motifs are different"; (2) the central motif in each design is different; (3) the

petal pattern in the designs are different, with one pointing upwards, and one pointing

downwards; (4) "beneath the petal pattern in the Subject Design is a butterfly design motif (or an

inverse petal pattern), while beneath the diamond pattern in the Subject Product is a leaf motif

making a V-shape"; (5) "beneath the butterfly design in the Subject Design is a U-shape, vase

motif that extends into organic scrolls, while beneath the diamond shape in the Subject Product,

it immediately joins with the repeat semi-circle (or fan shape) pattern on the following row"; (6)

"the motifs at the top of the design are entirely different from one another[,] . . . creating a

differing lace design sequence and pattern across the two laces"; and (7) the designs each have

different color schemes, with the Subject Design being light red in color, and Subject Product being white lace on a gold or beige background.  (Id. at 16-21, 24-25)[4]

Having reviewed the Subject Design and Subject Product,[5] this Court concludes that Klauber has not satisfied the heightened standard of striking similarity.[6]  Indeed, Klauber acknowledges that there are differences (which it characterizes as "slight") between the Subject Design and the Subject Product.  (Pltf. Opp. (Dkt. No. 32) at 12-16)[7]  The Court finds that Defendants have shown that the works reflect several significant differences with respect to elements, arrangement, and overall layout.

---

[4]  Defendants further argue that any similarities between the Subject Design and Subject Product are common to lace patterns and are not protectible under the scène à faire doctrine.  (Def. Br. (Dkt. No. 29) at 21-22; see also Pltf. Opp. (Dkt. No. 32) at 16-18)  Because, as discussed below, the Court concludes that the works are not strikingly similar, it does not reach the issue of whether the Subject Design incorporates unprotectible elements.

[5]  The Court can consider whether the Subject Design and Subject Product are "strikingly" or "substantially" similar on a motion to dismiss, because no discovery or fact-finding is necessary to compare the works.  See Dress Barn, 2019 WL 1949675, at *3 (citing Gaito Architecture, 602 F.3d at 66).

[6]  Because Klauber has not sufficiently alleged access or shown striking similarity, this Court does not reach the parties' arguments regarding whether the designs are substantially similar. (See Def. Br. (Dkt. No. 29) at 13-25; Pltf. Opp. (Dkt. No. 32) at 11-20); Def. Reply Br. (Dkt. No. 30) at 10-12)

[7]  Attempting to make lemonade from lemons, Klauber argues that the differences cited by Defendants "make clear that Defendants' infringement was knowing and willful."  (Pltf. Opp. (Dkt. No. 32) at 16 (citing Concord Fabrics, Inc. v. Marcus Bros. Textile Corp., 409 F.2d 1315, 1316 (2d Cir. 1969)))  Concord Fabrics is not applicable here, however.  That case addresses whether minor differences between a copyrighted work and an allegedly infringing work preclude a finding of substantial similarity.  In finding that the minor differences in the designs at issue in that case did not preclude a finding of substantial similarity, the court noted that "the very nature of these differences only tends to emphasize the extent to which the defendant has deliberately copied from the plaintiff."  Concord Fabrics, 409 F.2d at 1316.  But here, unlike in Concord Fabrics, the Court is applying the more rigorous standard of striking similarity – not substantial similarity – and the differences between the designs negate, rather than support, an inference of copying.

*      *      *      *

In sum, Klauber has not adequately alleged access or striking similarity, and thus has not pled the first element of a direct copyright infringement claim – actual copying.  For these reasons, Klauber's direct copyright infringement claim was dismissed.

### C.   Whether Klauber Has Adequately Pled Indirect Copyright Infringement

Klauber has also alleged claims for vicarious and contributory copyright liability.

(See Am. Cmplt. (Dkt. No. 22) ¶¶ 27-33)  The Amended Complaint alleges, inter alia, that

> Plaintiff is informed and believes and thereon alleges that Defendants knowingly induced, participated in, aided and abetted in and profited from the illegal reproduction and/or subsequent sales of garments featuring the Subject Design by, inter alia, directing the manufacture of or selection and sourcing of materials and designs for the Infringing Products or had agreements requiring the manufacture or sourcing of certain materials or designs, with the ability and right to supervise, direct, cancel, or otherwise modify its orders for the manufacture or purchase of the Infringing Products.  Plaintiff is informed and believes and thereon alleges that Defendants had direct oversight or involvement in the sourcing of materials for and manufacture of the Infringing Products and thus knew, induced, caused, or materially contributed to the infringement of Plaintiff's rights as alleged herein. The true and complete extent to which Defendants were involved in a network of infringement with as of yet undiscovered Doe Defendants and/or direct infringers will be ascertained during discovery in this action.

(Id. ¶ 28)

To state a claim for contributory copyright infringement, a plaintiff must allege that a defendant "'(1) had actual or constructive knowledge of the infringing activity, and (2) encouraged or assisted others' infringement, or provided machinery or goods that facilitated infringement.'"  QVC, 2020 WL 7029088, at *3 (quoting Arista Records LLC v. Lime Grp. LLC, 784 F. Supp. 2d 398, 432 (S.D.N.Y. 2011)).  To state a claim for vicarious copyright infringement, a plaintiff must allege that the defendant "'[(1)] had the right and ability to supervise the infringing activity and [(2)] ha[d] a direct financial interest in such activities.  Id. (quoting Arista Records, 784 F. Supp. 2d at 434) (alterations in QVC omitted).  "[I]n the case of either contributory or vicarious liability for copyright infringement, there must be primary

infringement by either a Defendant in this case or by some third party." Id. (citing Faulkner v. Nat'l Geographic Enters. Inc., 409 F.3d 26, 40 (2d Cir. 2005)).

Here, Klauber has not adequately pled indirect infringement. Its allegations of indirect infringement "lump[] Defendants together with unidentified Doe defendants," and lack an adequate factual foundation to establish the elements of an indirect copyright infringement claim. (Def. Br. (Dkt. No. 29) at 26) Klauber's claims for contributory and vicarious liability also fail because Klauber has not adequately alleged primary infringement by Defendants or any third party. See Faulkner, 409 F.3d at 40.

For these reasons, Klauber's indirect infringement claims were dismissed.

## IV.   LEAVE TO AMEND

District courts have "broad discretion in determining whether to grant leave to amend." Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000). Leave to amend may properly be denied in cases of "'undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). "Where the possibility exists that [a] defect can be cured," leave to amend "should normally be granted" at least once. Wright v. Ernst & Young LLP, No. 97 CIV. 2189 (SAS), 1997 WL 563782, at *3 (S.D.N.Y. Sept. 10, 1997), aff'd, 152 F.3d 169 (2d Cir. 1998) (citing Oliver Schs., Inc. v. Foley, 930 F.2d 248, 253 (2d Cir. 1991)). Moreover, where a claim is dismissed on the grounds that it is "inadequate[ly] [pled]," there is "a strong preference for allowing plaintiffs to amend." In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig., No. 08 MDL 1963, 2011 WL 4072027, at *2 (S.D.N.Y. Sept. 13, 2011) (citing Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir. 1990)).

Here, Klauber has requested leave to amend, citing Fed. R. Civ. P. 15's "liberal" standard for granting such requests.  (Pltf. Opp. (Dkt. No. 32) at 23)  Although Klauber has already had one opportunity to amend its complaint, leave to amend is granted.

## **CONCLUSION**

It is for the reasons stated above that this Court issued its September 30, 2022 Order granting Defendants' motion to dismiss.  Any motion for leave to file a second amended complaint will be submitted by October 17, 2022.  The proposed second amended complaint is to be attached as an exhibit to the motion.

Dated: New York, New York
      October 4, 2022

                             SO ORDERED.

                             _____
                             Paul G. Gardephe
                             United States District Judge