UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KLAUBER BROTHERS, INC.,

                              Plaintiff,

        - against -

M.J.C.L.K., LLC (individually and doing
business as "Badgley Mischka"); SAKS
INCORPORATED; and DOES 1-10,

                              Defendants.

**MEMORANDUM
OPINION & ORDER**

21 Civ. 4523 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

>        Plaintiff Klauber Brothers, Inc. ("Klauber") alleges that Defendants M.J.C.L.K.,
LLC ("Badgley Mischka") and Saks Inc. infringed Klauber's copyright in a particular lace
design, by selling fabric and clothing that contain that design (the "Lace Design"). (Am. Cmplt.
(Dkt. No. 22); Proposed Second Am. Cmplt. ("SAC") (Dkt. No. 51-1))

>        On December 3, 2021, Defendants Badgley Mischka and Saks moved to dismiss
the Amended Complaint under Fed. R. Civ. P. 12(b)(6). (Mot. to Dismiss (Dkt. No. 28)) On
September 30, 2022, this Court granted Defendants' motion, finding that the Amended
Complaint did not plead facts showing (1) Defendants' access to the Lace Design; or (2) a
striking similarity between the Lace Design and Defendants' alleged infringing products. (See
Sept. 30, 2022 Order (Dkt. No. 33); see also Klauber Bros., Inc. v. M.J.C.L.K., LLC, No. 21 Civ.
4523 (PGG), 2022 WL 5108902 (S.D.N.Y. Oct. 4, 2022) (the "Dismissal Order"). Dismissal
was with leave to amend. See Dismissal Order, 2022 WL 5108902, at *8.

>        On August 11, 2023, Plaintiff moved – pursuant to Rule 15(a)(2) – for leave to
file a Second Amended Complaint. (Mot. to Amend (Dkt. No. 49)) In the proposed SAC,

Plaintiff re-pleads its claims for direct and indirect infringement, but adds allegations concerning Defendants' access to the Lace Design.  (See SAC (Dkt. No. 51-1) ¶¶ 31-45)

For the reasons stated below, Plaintiff will be permitted to file a Second Amended Complaint consistent with this Opinion.

## BACKGROUND[1]

## I.    FACTS[2]

Plaintiff Klauber owns a copyright for the Lace Design.  (SAC (Dkt. No. 51-1) ¶¶ 10-11)  The SAC alleges that Defendant Saks – which sells consumer products with Defendant Badgley Mischka's label – infringed Klauber's copyright by "creat[ing]," "manufactur[ing]," and selling products that "incorporat[e]" the Lace Design.  (Id. ¶ 23)

Klauber and Badgley Mischka had a "direct and ongoing business relationship" "[p]rior to the infringement at issue," going back to "at least July 2018."  (Id. ¶¶ 12-14)  The SAC alleges that, as a result of that business relationship, Badgley Mischka had a "reasonable opportunity to access" the Lace Design.  (Id. ¶ 12)  As to access, the SAC alleges the following:

> (1) Klauber provided samples of and "sold over 23,881 yards of lace bearing the [Lace Design] to numerous parties in the retail and apparel industries," including "at least 15,000 yards [that] were provided in the years immediately preceding the alleged acts of infringement . . . to customers in New York City, where Badgley Mischka is located."  (Id. ¶¶ 19-20; see id., Ex. 1)

---

[1]  The background facts are set forth in greater detail in the Dismissal Order, Klauber, 2022 WL 5108902, at *1-2, and are only summarized below.  Familiarity with the Dismissal Order is assumed.

[2]  The Court's factual statement is drawn from the proposed SAC and documents incorporated by reference.  For purposes of resolving Plaintiff's motion for leave to amend, the well-pled facts in the proposed SAC are presumed true.  See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 110-11 (2d Cir. 2010) (in the context of a Rule 12(b)(6) motion to dismiss); In re Trib. Co. Fraudulent Conv. Litig., 10 F.4th 147, 175 (2d Cir. 2021) ("To determine whether granting leave to amend would be futile, we consider the proposed amendments and the original complaint.").

(2) Klauber maintained a "catalog" or "library" "for many different designs," including the Lace Design. (<u>Id.</u> ¶¶ 14-15, 17)  Badgley Mischka "exchanged several emails" with Klauber to "request[] pricing and samples for many different designs in Klauber's catalog," and "placed at least 15 purchase orders for [Klauber's] . . . designs," before creating the alleged infringing products. (<u>Id.</u> ¶¶ 15-17)

(3) Klauber exhibited the Lace Design at a trade show in January 2018. (<u>Id.</u> ¶ 18)  Badgley Mischka attended this trade show and "placed at least one order . . . with Klauber." (<u>Id.</u>)

(4) Klauber's "sales representatives marketed [its] designs, including the [Lace] Design, directly to Badgley Mischka." (<u>Id.</u> ¶ 14) (emphasis omitted)

(5) Klauber manufactured its "laces featuring the [Lace] Design" in "Chinese markets." (<u>Id.</u> ¶ 21)  Badgley Mischka manufactured its garments in "the same Chinese markets." (<u>Id.</u>)

The SAC contends that, at some unspecified point after the business relationship between Klauber and Badgley Mischka began, Defendants "incorporat[ed] at least a portion of the [Lace Design]" in their fabric and garments. (<u>Id.</u> ¶¶ 23-24)  The SAC provides a side-by-side comparison of Plaintiff's Lace Design and Defendants' alleged "infringing" dress, which is set forth below (<u>see id.</u> ¶ 24):

**Klauber's Lace Design**

**Defendants' Alleged Infringing Product**





The SAC also includes the following illustration identifying "same" or "similar" elements in the two works (id. ¶ 25):



Same Overall Geometric Patterns in Similar Arrangement with Same Connective Stitching

The SAC describes three alleged "similarities" between Klauber's Lace Design and Defendants' dress:  (1) a pattern comprised of diamonds nested within diamonds; (2) "curlicues," which curl and twist in the "same arrangement"; and (3) several "geometric patterns" with fan-like designs.  (Id.)  Klauber's illustrations supporting its allegations are set forth below:

| Klauber's Lace Design | Examples of Defendants' Alleged Infringing Uses |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

 

According to the SAC, "the elements, composition, arrangement, layout, and appearance" of the design on Defendants' dress "is strikingly and substantially similar" to the Lace Design.  (Id. ¶ 26 (alleging that the "lace designs overall are virtually identical"); see also id. ¶ 27 (the two designs "contain multiple sets of strikingly similar motifs" which "foreclose the possibility of independent creation"))  According to Klauber, any "differences" between the two designs are the result of "Defendants using cruder, lower-quality techniques and machinery to produce or manufacture the[ir] [i]nfringing [p]roducts."  (Id. ¶ 28)

## II.    PROCEDURAL HISTORY

### A.    The Amended Complaint and the October 4, 2022 Dismissal Order

The Amended Complaint was filed on September 24, 2021, and asserts claims for direct and indirect copyright infringement against Badgley Mischka, Saks, and ten Doe Defendants who are "manufacturers and/or vendors of products."  (Am. Cmplt. (Dkt. No. 22) ¶¶ 5-9, 19-33)

On December 3, 2021, Defendants Saks and Badgley Mischka moved to dismiss the Amended Complaint, arguing that Klauber had not pled actual copying.  (Def. MTD Br. (Dkt. No. 29) at 9-25)[3]

---

[3]  The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

In a September 30, 2022 order and October 4, 2022 memorandum opinion, this Court granted Defendants' motion.  (Sept. 30, 2022 Order (Dkt. No. 33); Dismissal Order, 2022 WL 5108902, at *7-9)

As to direct infringement, this Court found that the Amended Complaint "does not specify to whom the [Lace Design] was distributed" or "allege sufficient facts to support an inference that th[e] quantity [of the Lace Design distributed in New York City] constitutes widespread dissemination in the relevant market."  Dismissal Order, 2022 WL 5108902, at *4. Given Klauber's failure to "substantiate[] its allegations regarding widespread dissemination, or otherwise provide[] an adequate link between the distribution of the [Lace Design] and Defendants," the Amended Complaint did not plausibly allege that Defendants had access to the Lace Design.  Id. at *3.  For example, the Amended Complaint did not plead facts sufficient to demonstrate (1) "when [Klauber] had a business relationship with Badgley Mischka – whether before, during, or after Klauber's creation and dissemination of the [Lace] Design"; or (2) "whether its design library" which Badgley Mischka allegedly had access to, "included the [Lace] Design."  Id. at *4.

This Court further concluded that the Amended Complaint did not plead facts sufficient to demonstrate that the Lace Design and Defendants' designs are so "strikingly similar" as to preclude the possibility of independent creation, given that "the works reflect several significant differences with respect to elements, arrangement, and overall layout."  Id. at *7.

As to indirect infringement, this Court noted that – for Defendants Badgley Mischka or Saks to be contributorily or vicariously liable for the infringing acts of others – "'there must be primary infringement by either a [d]efendant in this case or by some third

party.'" Id. at *8 (quoting <u>Klauber Bros., Inc. v. QVC, Inc.</u>, No. 19 Civ. 9321 (MKV), 2020 WL

7029088, at *3 (S.D.N.Y. Nov. 30, 2020)).  Because the Amended Complaint does not plead

facts demonstrating any primary infringement, it "lack[ed] an adequate factual foundation to

establish the elements of an indirect copyright infringement claim."  Id.

## B.   **The Proposed Second Amended Complaint**

Following the Dismissal Order, Plaintiff moved for leave to file a Second

Amended Complaint, submitting the proposed SAC.  (Mot. to Amend (Dkt. No. 49); SAC (Dkt.

No. 51-1))

The SAC pleads the same causes of action as the Amended Complaint, but adds

the following new factual allegations:

(1) at some point "[p]rior to the infringement at issue," Badgley Mischka "requested
pricing and samples" and placed orders from Klauber's "design library," which
includes the Lace Design (SAC (Dkt. No. 51-1) ¶¶ 12, 15, 17);

(2) at some point "before committing the infringement at issue," a Badgley Mischka
employee created an account – under the username "Lucia (Badgley Mischka)" – that
the employee used to access Klauber's "online design catalog," which includes the
Lace Design (<u>id.</u> ¶ 17);

(3) Badgley Mischka attended a January 2018 trade show in which Klauber exhibited the
Lace Design (<u>id.</u> ¶ 18);

(4) Klauber's sales representatives "directly" "marketed" its designs, including the Lace
Design, to Badgley Mischka (<u>id.</u> ¶ 14) (emphasis omitted);

(5) Klauber provided "numerous samples" of its designs to Badgley Mischka (<u>id.</u> ¶¶ 15-
16);

(6) the same markets that manufacture Klauber's "laces featuring the [Lace] Design" also
manufacture Badgley Mischka's garments.  (<u>Id.</u> ¶ 21).

Attached as an exhibit to the SAC is a table summarizing sales of the Lace Design

(Pattern 39092) from June 6, 2016 to May 13, 2021.  (<u>Id.</u> ¶¶ 10, 19; <u>id.</u> at 17-30 (Ex. 1))  All

customer names are redacted, however.

# DISCUSSION

## I.    LEGAL STANDARDS

### A.    Leave to Amend

Leave to amend should be "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  District courts "'ha[ve] broad discretion in determining whether to grant leave to amend.'"  United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 28 (2d Cir. 2016) (quoting Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000)).

Leave to amend may properly be denied, however, where there is a "'repeated failure to cure deficiencies by amendments previously allowed.'"  Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).  Leave to amend may also be denied where a proposed amendment to a pleading would be futile, Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) – that is, where it "would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)."  Panther Partners Inc. v. Ikanos Commc'ns, Inc., 681 F.3d 114, 119 (2d Cir. 2012).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" id. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests," Port Dock & Stone Corp. v. Oldcastle Northeast Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief]."  Iqbal, 556 U.S. at 678.

In determining "whether granting leave to amend would be futile," a district court may consider "the proposed amendments," "the original complaint," as well as "document[s] . . . integral to the complaint[s]." In re Trib. Co. Fraudulent Conv. Litig., 10 F.4th 147, 175-76 (2d Cir. 2021) (citations omitted). In a copyright infringement action, a court may consider the disputed "works in question" on a motion to dismiss, where the works "are attached to a plaintiff's complaint." Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 64-65 (2d Cir. 2010) (courts must consider "the works themselves," which "supersede and control" "any contrary allegations, conclusions or descriptions of the works contained in the pleadings") (citation and internal quotation marks omitted).

Parties "'opposing a motion to amend . . . bear[] the burden of establishing that an amendment would be futile.'" Hollander v. Pressreader, Inc., No. 19 Civ. 2130 (AJN), 2020 WL 2836189, at *5 (S.D.N.Y. May 30, 2020) (quoting Bonsey v. Kates, No. 13 Civ. 2708 (RWS), 2013 WL 4494678, at *8 (S.D.N.Y. Aug. 21, 2013)).

### B.  Copyright Infringement

To state a claim for direct copyright infringement, a plaintiff must establish "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); see also Arista Recs., LLC v. Doe 3, 604 F.3d 110, 117 (2d Cir. 2010) (same).

As to ownership of a copyright, a registered copyright carries "a statutory presumption" that it is valid. Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 109 (2d Cir. 2001); see 17 U.S.C § 410(c) ("[I]n any judicial proceedings[,] the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright.").

As to infringement, a plaintiff must plead facts demonstrating that "(1) the defendant actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's [work]." Gaito, 602 F.3d at 63 (quoting Hamil Am. Inc. v. GFI, 193 F.3d 92, 99 (2d Cir. 1999)).

Actual copying may be shown with direct evidence, for example, "by defendant[s'] admission or by an eyewitness account." Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp., 210 F. Supp. 2d 147, 159 (E.D.N.Y. 2002), aff'd sub nom. 354 F.3d 112 (2d Cir. 2003).

Actual copying may also be inferred from indirect evidence where

(1) "the defendants had access to the copyrighted work" when they created the allegedly infringing work, and there are "similarities that are probative of copying between the works," Hamil Am., 193 F.3d at 99; or

(2) the works are "strikingly similar." Lipton v. Nature Co., 71 F.3d 464, 471 (2d Cir. 1995).

In connection with the first test, access may be "inferred from the fact that a work was widely disseminated," or where "a party had a reasonable possibility of viewing the prior work," Boisson v. Banian, Ltd., 273 F.3d 262, 270 (2d Cir. 2001), as the result of "a particular chain of events." Tomasini v. Walt Disney Co., 84 F. Supp. 2d 516, 519 (S.D.N.Y. 2000) (internal citations and quotation marks omitted). "A reasonable possibility" of having viewed the prior work is "not simply a 'bare possibility,'" and it "cannot be based on mere 'speculation or conjecture.'" Jorgensen v. Epic/Sony Recs., 351 F.3d 46, 51 (2d Cir. 2003) (quoting Gaste v. Kaiserman, 863 F.2d 1061, 1066 (2d Cir. 1988)); see also Clanton v. UMG Recordings, Inc., 556 F. Supp. 3d 322, 328 (S.D.N.Y. 2021) (on a motion to dismiss). However, a plaintiff "'need not prove that the infringer actually saw the work in question; it is enough to prove that the infringer (or his intermediary) had the mere opportunity to see the work.'" Jorgensen, 351 F.3d at 51

(quoting Bouchat v. Baltimore Ravens, Inc., 241 F.3d 350, 354 (4th Cir. 2001)); see also Clanton, 556 F. Supp. 3d at 329-30 ("[t]he language from Jorgensen . . . applies . . . when the plaintiff has plausibly alleged a chain of events through which his work was accessed by the defendant"); Cates v. Shlemovitz, No. 21 Civ. 0805 (LEK), 2022 WL 1238450, at *3 (N.D.N.Y. Apr. 27, 2022) (same).

      In addition to alleging access under the first test, plaintiff must plead facts establishing "probative similarity" between the two works.  Repp v. Webber, 132 F.3d 882, 889 n.1 (2d Cir. 1997).  "Probative similarity" is "the degree of similarity that suffices . . . as indirect proof of copying," and "requires only the fact that the infringing work copies something from the copyrighted work."  Ringgold v. Black Ent. Television, Inc., 126 F.3d 70, 74-75 (2d Cir. 1997); Repp, 132 F.3d at 889 n.1 (describing "probative similarity" as an "initial burden").

      In making the "probative similarity" determination, a court should examine both works in their "entirety," see Porto v. Guirgis, 659 F. Supp. 2d 597, 609 n.4 (S.D.N.Y. 2009), and consider whether the kind and degree of similarity is such that it "would not be expected to arise if the works had been created independently."  O'Keefe v. Ogilvy & Mather Worldwide, Inc., 590 F. Supp. 2d 500, 517 (S.D.N.Y. 2008) (citation and internal quotation marks omitted).

      In connection with the access and "probative similarity" determinations, the Second Circuit has endorsed a sliding scale approach, "such that the stronger the proof of similarity, the less the proof of access is required."  Jorgensen, 351 F.3d at 56 (citation and internal quotation marks omitted).

      As to the second test – which turns on whether the two works are "strikingly similar" – plaintiff need not prove access.  Id. (where works are "'strikingly similar,'" "'copying may be proved without a showing of access'") (quoting Lipton, 71 F.3d at 471).  The test for

"striking similarity" is "stringent." Tisi v. Patrick, 97 F. Supp. 2d 539, 548 (S.D.N.Y. 2000);

Larball Publ'g Co., Inc. v. Lipa, No. 22 Civ. 1872 (KPF), 2023 WL 5050951, at *13 (S.D.N.Y.

Aug. 8, 2023) ("proving striking similarity as a factual matter will be a tall task"). A plaintiff

must allege facts demonstrating that the works are "so strikingly similar as to preclude the

possibility of independent creation." Lipton, 71 F.3d at 471 (internal citation omitted); see also

Gal v. Viacom Int'l, Inc., 518 F. Supp. 2d 526, 537 (S.D.N.Y. 2007) ("'Striking similarity exists

when two works are so nearly alike that the only reasonable explanation for such a great degree

of similarity is that the later was copied from the first.'") (quoting American Direct Mktg., Inc. v.

Azad Int'l, Inc., 783 F. Supp. 2d 84, 95 (E.D.N.Y. 1992)).

      If actual copying has been adequately pled under either test, the court must go on

to consider whether the complaint pleads facts demonstrating that "the copying was improper or

unlawful," in that "the [allegedly infringing] work bears 'substantial similarity' to protected

expression in [plaintiff's] work." Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc., 150 F.3d

132, 137 (2d Cir. 1998); Ringgold, 126 F.3d at 75 (describing "substantial similarity" as a "legal

conclusion that infringement (actionable copying) has occurred"). This inquiry is necessary

because "not all copying results in copyright infringement, even if the plaintiff has a valid

copyright." Boisson, 273 F.3d at 268.

      The traditional "test for substantial similarity between two items is whether an

'ordinary observer, unless he [or she] set out to detect the disparities, would be disposed to

overlook them, and regard the aesthetic appeal as the same.'" Gaito, 602 F.3d at 66 (quoting

Yurman Design, 262 F.3d at 111). In applying this "ordinary observer test," courts "ask whether

'an average lay observer would recognize the alleged copy as having been appropriated from the

copyrighted work.'" Id. (quoting Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1002 (2d Cir. 1995)).

   A "more discerning" inquiry regarding "substantial similarity" is necessary where the copyrighted work "is not 'wholly original,' but rather incorporates elements from the public domain." Boisson, 273 F.3d at 272 (quoting Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters., Inc., 945 F.2d 509, 514 (2d Cir. 1991)). In such circumstances, a court "must attempt to extract the unprotectible elements from [its] consideration and ask whether the protectible elements, standing alone, are substantively similar," Knitwaves, 71 F.3d at 1002, and whether "the amount that was copied is 'more than de minimis.'" Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 131 (2d Cir. 2003) (citing Castle Rock, 150 F.3d at 137-38).

   In performing the various required analyses, courts

> are principally guided "by comparing the contested design's 'total concept and overall feel' with that of the allegedly infringed work," Tufenkian[, 338 F.3d at 133] . . . , as instructed by our "good eyes and common sense," Hamil Am., 193 F.3d at 102 (alteration omitted). . . . [I]n the end, our inquiry necessarily focuses on whether the alleged infringer has misappropriated "the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work." Knitwaves Inc., 71 F.3d at 1004 (quoting Feist[, 499 U.S. at 358]).

Gaito, 602 F.3d at 66.

## II.  ANALYSIS

### A.  Direct Copyright Infringement

#### 1.  Actual Copying

   Klauber argues that the SAC plausibly alleges that (1) the Lace Design was widely disseminated or, in the alternative, (2) Defendants had a reasonable possibility of accessing the Lace Design before designing their own dress, which includes similarities to the Lace Design that are probative of actual copying. (Pltf. Br. (Dkt. No. 50) at 8-12)

a.      **Whether the SAC Adequately Alleges**
**Access Premised on Wide Dissemination**

In the SAC, Klauber alleges that it provided samples of and sold "over 23,881

yards of lace bearing the [Lace] Design to numerous parties in the retail and apparel industries,"

including "at least 15,000 yards [that] were provided in the years immediately preceding the

alleged acts of infringement . . . to customers in New York City, where Badgley Mischka is

located."  (SAC (Dkt. No. 51-1) ¶¶ 19-20)

As explained in the Dismissal Order, these allegations do not – standing alone –

demonstrate that the Lace Design was so widely disseminated in the relevant market that

Defendants would have had access to it.  See Dismissal Order, 2022 WL 5108902, at *3-4.  Like

the Amended Complaint, the SAC does not plead facts suggesting that the 15,000 yards of lace

distributed in New York City constitutes "considerable commercial success" or demonstrates

that the Lace Design is "readily available on the market."  Silberstein v. Fox Eng. Grp., Inc., 424

F. Supp. 2d 616, 627 (S.D.N.Y. 2004).

The new facts alleged in the SAC do not alter the analysis.  While the SAC states

that the Lace Design was exhibited at a trade show in January 2018 (SAC (Dkt. No. 51-1) ¶ 18),

Klauber does not offer any facts concerning the number of attendees at the trade show, or

whether Defendants' alleged infringement took place after the trade show.  And while the SAC

includes a table summarizing sales of the Lace Design between June 6, 2016 and May 13, 2021 –

with customers' names redacted (id. ¶ 19; id. at 17-30 (Ex. 1)) – the SAC does not indicate (1)

whether Defendant Badgley Mischka or Defendant Saks was a customer; (2) whether any of the

customers were located in New York City; (3) whether these sales occurred before the alleged

infringement; or (4) the geographic distribution of the sales.  See Dress Barn, Inc. v. Klauber

Bros., Inc., No. 18 Civ. 8085 (DLC), 2019 WL 1949675, at *5 (S.D.N.Y. Apr. 22, 2019)

(granting motion to dismiss because "Klauber pleads no facts to demonstrate that the [330,000]

yards of lace it 'sampled or sold' constitute widespread dissemination, . . . or occurred before

[defendant] engaged in its allegedly infringing activities") (quoting Boisson, 273 F.3d at 270);

Klauber Bros., Inc. v. QVC, Inc., No. 19 Civ. 9321 (MKV), 2020 WL 7029088, at *9 (S.D.N.Y.

Nov. 30, 2020) (granting motion to dismiss where complaint did not plausibly allege that

"Defendants . . . likely had access to Plaintiff's designs before manufacturing and marketing the

allegedly infringing products . . . because the design was widely disseminated") (emphasis in

original omitted).

    In sum – as this Court found in dismissing the Amended Complaint – the SAC's

conclusory claim of "wide[] disseminat[ion]" (SAC (Dkt. No. 51-1) ¶ 13; see also see Am.

Cmplt. (Dkt. No. 22) ¶ 13) is not sufficient by itself to adequately allege access. See Dismissal

Order, 2022 WL 5108902, at *3-4; Boisson, 273 F.3d at 270.

**b.  Whether there is a "Reasonable Possibility"
that Defendants Viewed the Lace Design**

    In the alternative, Klauber argues that the SAC pleads facts demonstrating a

"reasonable opportunity" that Defendants viewed the Lace Design. (SAC (Dkt. No. 51-1) ¶ 12)

In this regard, Klauber notes that the Lace Design is included among "many different designs" in

its "catalog" or "library" of designs, from which Badgley Mischka "place[d] sample orders"

"[p]rior to the infringement at issue." (Id. ¶¶ 12-15) Klauber also exhibited the Lace Design at a

January 2018 trade show, which Badgley Mischka attended. (Id. ¶ 18) At that trade show,

Badgley Mischka "placed at least one order" with Klauber. (Id.) A Klauber "sales

representative [also] marketed [Klauber's] designs, including the [Lace] Design, directly to

Badgley Mischka." (Id. ¶ 14) Finally, Klauber and Badgley Mischka use the same manufacturer

in China, which gave Badgley Mischka "an opportunity to view" the Lace Design. (Id. ¶ 21)

###### i.      Klauber's Design Catalog and Library

The SAC alleges that Klauber's "catalog," "design library," and "online design catalog" all contained the Lace Design (SAC (Dkt. No. 51-1) ¶¶ 13, 15, 17); that Badgley Mischka must have "reviewed" the catalog, because it placed several orders for "many of" Klauber's lace designs from the catalog (id. ¶ 15 (alleging that Badgley Mischka "placed at least 15 purchase orders for many of Plaintiff's proprietary designs" and "requested pricing and samples for many different designs in Klauber's catalog"); id. ¶ 13 (alleging that Badgley Mischka "received numerous samples of Plaintiff's designs")); that Badgley Mischka placed its orders "during th[e] time" when Badgley Mischka and Klauber had "a direct and ongoing business relationship"; and that Badgley Mischka placed its orders "[p]rior to the infringement at issue," going back to "at least July 2018."[4]  (Id. ¶¶ 12-13, 15; see id. ¶ 17 (alleging that Badgley Mischka created an account to access Klauber's online design catalog "before committing the infringement at issue"))

---

[4]  A plaintiff alleging copyright infringement must plead "by what acts during what time the defendant[s] infringed the copyright." Kelly v. L.L. Cool J., 145 F.R.D. 32, 36 (S.D.N.Y. 1992), aff'd, 23 F.3d 398 (2d Cir. 1994).  Klauber has not pled precise dates when Defendants' alleged infringement began or ended, or when Defendants disseminated its Lace Design.  For example, in asserting that Badgley Mischka had access to the Lace Design, the SAC alleges generally that at some point "[p]rior to the infringement at issue," or "before committing the infringement at issue," Badgley Mischka accessed Klauber's design library and online design catalog.  (SAC (Dkt. No. 51-1) ¶¶ 12, 17)  Similarly, the SAC states that some acts of infringement took place during Badgley Mischka's "business relationship with Klauber," which "continued through at least July 2018."  (Id. ¶¶ 12-13)

At the pleading stage, these allegations are sufficient "to provide notice of the period of time during which infringement occurred." LivePerson, Inc. v. 24/7 Customer, Inc., 83 F. Supp. 3d 501, 506, 509 (S.D.N.Y. 2015) (finding sufficient allegation that "the period of infringement was 'between 2006 when the parties began their contractual relationship and May 2014 when [plaintiff] filed the [amended complaint]'") (collecting cases); see also Ino, Inc. v. Needle & Threads of W. Palm Beach, Inc., No. 19 Civ. 4078 (PKC), 2020 WL 7343037, at *1, *5 (E.D.N.Y. Dec. 14, 2020) (finding sufficient allegation that defendants "had access to the [disputed d]esigns, prior to the acts of infringement alleged").

This Court concludes that the SAC plausibly pleads access.  See Boisson, 273 F.3d at 270.  Badgley Mischka accessed and ordered from Klauber's design library and catalog – which both include the Lace Design – prior to the alleged acts of infringement.  (See SAC (Dkt. No. 51-1) ¶¶ 12, 15, 17)  Accordingly, Badgley Mischka had a reasonable opportunity to view and copy the Lace Design prior to creating the alleged infringing fabrics and garments.  See, e.g., Rauch Indus., Inc. v. David Strand Designs, LLC, No. 10 Civ. 5476 (LAK) (JCF), 2011 WL 13383540, at *1-2 (S.D.N.Y. Nov. 21, 2011) (finding sufficient at pleading stage allegation that defendants "had access to . . . print catalogues that contained [disputed] designs" at the time of the infringement), report and recommendation adopted, No. 10 Civ. 5476 (LAK), 2011 WL 13383541 (S.D.N.Y. Dec. 15, 2011).

Klauber Bros., Inc. v. City Chic Collective Ltd., No. 22 Civ. 743 (MWF), 2022 WL 18278400 (C.D. Cal. Dec. 6, 2022) is instructive on this point.  In that case, as here, Klauber alleged that "[p]rior to the infringement at issue," Klauber and defendants "had a business relationship," in which defendants "would meet with agents working on behalf of Klauber, review and shop from Klauber's entire design library[,] and obtain physical and other samples of Klauber's designs."  City Chic Collective, 2022 WL 18278400, at *2 (citation and internal quotation marks omitted).  The referenced "design library" included all three of the lace designs that defendants had allegedly infringed.  Id.  Klauber alleged that the defendants had "ordered sample yardage of certain laces" from the design library, but did not allege that the defendants had ordered samples of one of the disputed designs.  Id. at *6.  Defendants moved to dismiss, arguing that Klauber was "required" to allege that they had ordered samples of each of the disputed lace designs.  Id.

In rejecting defendants' argument, the <u>City Chic Collective</u> court explained that Klauber was not required to allege that defendants "actually purchased" each disputed lace design:

> Clearly, for [defendants] to have made any selections as to which designs to purchase samples of, [they] would have had the opportunity to view Plaintiff's broader collection [as presented in its design library]. . . . Proof of access <u>via</u> a particular chain of events requires "'reasonable opportunity' or 'reasonable possibility' of <u>viewing</u> the plaintiff's work"; it does not require allegations that the infringer purchased the Plaintiff's [prior] work. <u>See Star Fabrics, Inc. v. Wet Seal, Inc.</u>, [No. 14 Civ. 7163 (BRO),] 2014 WL 12591271, at *3 (C.D. Cal. Dec. 2, 2014).

<u>Id.</u> (emphasis in original).

The same logic applies here. Klauber has articulated a "chain of events" by which Badgley Mischka "accessed" the Lace Design "through its prior business relationship [with Klauber,] in which [it] reviewed and shopped from [Klauber's] 'design library' and ordered physical sample yardage of certain laces." <u>Id.</u>[5]

In arguing that Klauber has not adequately pled access, Defendants contend that (1) the SAC does not plead facts demonstrating that Defendants did in fact "view" or "receive[] a sample" of the Lace Design; (2) the SAC does not contain any "'significant, affirmative[,] and probative evidence'" of access; and (3) courts have dismissed other Klauber copyright infringement claims premised on "nearly identical allegations [of access]." (Def. Opp. (Dkt. No. 53) at 10-12) (quoting <u>Jorgensen</u>, 351 F.3d at 51)

---

[5] In their opposition brief, Defendants assert that "Badgley Mischka did not design the lace" on the allegedly infringing products, but instead "acquired the lace . . . from a third-party manufacturer." (Def. Opp. (Dkt. No. 53) at 11 n.1) On a motion to amend, however, courts may only consider facts alleged in the pleadings. <u>See Trib. Co. Fraudulent Conv. Litig.</u>, 10 F.4th at 175-76 ("To determine whether granting leave to amend would be futile, we consider the proposed amendments and the original complaint.").

As to Defendants' argument that the SAC does not plead facts showing that "Badgley Mischka ever viewed the [Lace] Design," or that it "ever received a sample of the [Lace] Design" (Def. Opp. (Dkt. No. 53) at 11), the short answer is that Klauber is not required to plead such facts. It is "'enough'" for a plaintiff alleging copyright infringement to proffer facts "'that the infringer . . . had the mere opportunity to see the work.'" Jorgensen, 351 F.3d at 54-55 (quoting Bouchat, 241 F.3d at 354-55); see also Cates, 2022 WL 1238450, at *3 (citing Jorgensen); Clanton, 556 F. Supp. 3d at 328 (complaint need only plead that "a party had a reasonable possibility of viewing the prior work"); id. at 329-30 ("[t]he language from Jorgensen stating that all a plaintiff must show is that the defendant 'had the mere opportunity to see the work' applies . . . when the plaintiff has plausibly alleged a chain of events through which his work was accessed by the defendant") (quoting Jorgensen); accord City Chic Collective, 2022 WL 18278400, at *6 (rejecting defendants' argument that "[p]laintiff is 'required' to allege (and essentially prove) that [d]efendants actually purchased samples of [the design at issue] to make out a claim for access").

Citing Jorgensen, however, Defendants contend that Klauber "must offer 'significant, affirmative[,] and probative evidence'" of access. (Def. Opp. (Dkt. No. 53) at 10) (quoting Jorgensen, 351 F.3d at 51) But Jorgensen was written at summary judgment, and the language quoted by Defendants must be considered in that context.[6]

---

[6] On a motion for summary judgment, "[b]are corporate receipt of [a copyrighted design], without any allegation of a nexus between the recipients and the alleged infringers, is insufficient to raise a triable issue of access." Jorgensen, 351 F.3d at 53; see also Muller v. Twentieth Century Fox Film Corp., 794 F. Supp. 2d 429, 442 (S.D.N.Y. 2011), aff'd sub nom. 501 F. App'x 81 (2d Cir. 2012) (granting summary judgment to defendants where "at best [plaintiff] alleges only 'bare corporate receipt'" of the disputed work, and "there is no evidence that [any of the defendants' employees] were involved in any aspect of the [alleged infringing work]"); Feuer-Goldstein, Inc. v. Michael Hill Franchise Pty. Ltd., No. 16 Civ. 9987 (PKC), 2019 WL

At the pleading stage, courts "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see also Port Dock, 507 F.3d at 121 (requiring only "fair notice of what the claim is and the grounds upon which it rests"); Schneider v. Pearson Educ., Inc., No. 12 Civ. 6392 (JPO), 2013 WL 1386968, at *3 (S.D.N.Y. Apr. 5, 2013) ("Notice pleading, not fact pleading, is all that is required to survive a motion to dismiss [a copyright infringement claim] under Rule 12(b)(6).") (citation omitted).

This Court concludes that the SAC pleads facts sufficient to demonstrate that Badgley Mischka "'had a reasonable possibility of viewing'" the Lace Design prior to the alleged acts of infringement. Clanton, 556 F. Supp. 3d at 328 (quoting Boisson, 273 F.3d at 270)

Finally, Defendants argue that courts have dismissed other Klauber copyright infringement claims premised on "nearly identical allegations [of access]." (Def. Opp. (Dkt. No. 53) at 11) But the SAC's allegations regarding Defendants' access go beyond what was alleged in the other Klauber cases cited by Defendants.

In Klauber Bros., Inc. v. URBN US Retail LLC, No. 21 Civ. 4526 (GHW), 2022 WL 1539905 (S.D.N.Y. May 14, 2022), for example, Klauber claimed that defendants' dresses infringed its copyright in lace pattern "Design 3886." URBN, 2022 WL 1539905, at *1. According to the complaint in that case, "[p]rior to" the alleged infringement, one of the defendants "had a business relationship with Plaintiff." (See URBN, No. 21 Civ. 4526 (GHW), Am. Cmplt. (Dkt. No. 40) ¶ 17) As a result of that business relationship, defendant had "access

_____

1382341, at *7 (S.D.N.Y. Mar. 27, 2019) (finding no access at summary judgment, where president of defendant company attended trade show at which plaintiff's work was displayed, but there was no evidence that the president "passed on what he saw to the creators of the [allegedly infringing] design").

to Plaintiff's showroom and/or design library," and "received samples of at least 87 of Plaintiff's

lace designs, including two swatches of" a "sister pattern" to Design 3886.  (Id. ¶¶ 15, 17, 25)

Klauber did not allege in URBN that its "design library" contained the disputed

Design 3886, however, nor did it offer any other possible link between defendants and Design

3886.  In ruling that Klauber's complaint did not adequately plead access, the court concluded

that Klauber's allegations – which concerned a "sister design" and "several other unrelated

designs" – "do[] nothing to support Plaintiff's claim that . . . defendants had access to Design

3886, the only design Plaintiff claims to have been infringed." URBN, 2022 WL 1539905, at *8.

In Klauber Bros., Inc. v. QVC, Inc., No. 19 Civ. 9321 (MKV), 2020 WL 7029088

(S.D.N.Y. Nov. 30, 2020), the court considered the following allegations regarding access:

> "Plaintiff is informed and believes thereon that Defendants, and each of them, had
> access to [the disputed lace designs], including, without limitation, through . . .
> access to Plaintiff's showroom and/or design library . . . [and] access to Plaintiff's
> strike-offs and samples."

QVC, 2020 WL 7029088, at *9.  The court found insufficient Klauber's conclusory allegations,

noting that Klauber "had fail[ed] to provide any actual facts to allow the [c]ourt to infer that any

Defendant had access to Plaintiff's designs." Id.

In contrast to URBN, QVC, and the Amended Complaint in the instant case, the

SAC pleads facts demonstrating that it is "reasonably possible" that Defendant Badgley Mischka

viewed the Lace Design before the alleged infringing acts were committed, given that (1)

Badgley Mischka ordered from Klauber's design library "[p]rior to the infringement at issue";

and (2) Klauber's design library contained the Lace Design.  (SAC (Dkt. No. 51-1) ¶¶ 12-13)  In

sum, the SAC adequately alleges Defendants' access.

     **c.**     <u>**Probative Similarity**</u>

To plead actual copying, a plaintiff must – in addition to adequately alleging access – plausibly allege that the similarities between the two works are probative of copying. Here, neither side has briefed the issue of probative similarity.

Viewing Klauber's Lace Design and Defendants' accused works in their "entirety," <u>see</u> <u>Porto</u>, 659 F. Supp. 2d at 609 n.4, it is apparent that they employ similar elements – fans, diamonds, leaves, curlicues – that are organized in very similar geometric patterns. These similarities are apparent from the comparison images set forth in the SAC (<u>see</u> SAC (Dkt. No. 51-1) ¶¶ 24-25), and are sufficient to demonstrate that Defendants' garments copy at least "something" from the Lace Design. <u>See</u> <u>Ringgold</u>, 126 F.3d at 75. Accordingly, the element of probative similarity is adequately pled.

The Court concludes that the SAC pleads facts sufficient to demonstrate actual copying.

     **2.**     <u>**Substantial Similarity**</u>

Having concluded that the SAC adequately pleads actual copying – the first element of a direct infringement claim – the Court next considers whether the copying was unlawful – <u>i.e.,</u> whether the allegedly infringing design "bears 'substantial similarity' to protected expression in [plaintiff's] work." <u>Castle Rock Entm't</u>, 150 F.3d at 137.

Neither side has briefed the issue of "substantial similarity."

At an earlier stage of this litigation, Defendants argued that the Court should apply the "more discerning" test for "substantial similarity," rather than the "ordinary observer" test, because the Lace Design contains both protectable and unprotectable elements. (Def. MTD Br. (Dkt. No. 29) at 15, 21-22)

As discussed above, a "more discerning" inquiry for determining "substantial similarity" is appropriate where the copyrighted work "is not 'wholly original.'" Boisson, 273 F.3d at 272 (quoting Key Publ'ns, 945 F.2d at 514).

While acknowledging that the Lace Design and the accused designs share "motifs" of fans, scalloped edges, diamonds, leaves, and curlicues, Defendants argue that "those [common] elements [are] inherent, natural, or necessary" in lace patterns. (Def. MTD Br. (Dkt. No. 29) at 21-22) (arguing that the "motifs" are not protectable under the "scénes á faire" doctrine)

Defendants' arguments regarding the applicability of the "more discerning" test are not persuasive. While the images of fans, diamonds, leaves, and curlicues seen in the Lace Design are in the public domain and not protectable, the creative design, organization, and "artistic rendering[]" of these elements is protectible. Hamil Am., 193 F.3d at 101 (noting that flowers in the fabric design at issue are "not simply the [unprotectable] depiction of a flower as it would appear in nature"). Klauber's "original contribution[]" is the way it "'selected, coordinated, and arranged' the elements of [the Lace Design]," Knitwaves, 71 F.3d at 1004 (quoting Feist, 499 U.S. at 350), "selecting" certain geometric shapes – including fans, diamonds, and curlicues – "as its dominant design elements." Id. The mere "fact that the designs at issue in this case portrayed [unprotectable geometric shapes] does not preclude the use of the ordinary observer standard." Hamil Am., 193 F.3d at 101; see also QVC, 2020 WL 7029088, at *4 (applying the "ordinary observer" test in considering two lace designs that feature "flowers, colors, swirls, etc."). The Court concludes that the "ordinary observer" test is the appropriate standard in this case.

Under the "ordinary observer" standard, this Court's obligation is to "examine the works' 'total concept and feel,'" rather than the individual elements. Knitwaves, 71 F.3d at 1003 (citation omitted). Both Klauber's Lace Design and Defendants' accused design – as seen in images of Defendants' garments that are included in the SAC (see SAC (Dkt. No. 51-1) ¶¶ 24-25) – employ the same individual elements in a similar spatial arrangement and in similar proportions. Both designs utilize fans, diamonds, and curlicues as their main elements, and arrange the individual elements in repeating lines with no discernible top, bottom, or end. The most dominant element in both designs is a repeating large fan, which is connected to other large fans with smaller fans, diamonds-within-diamonds, and curlicues. In both designs, the individual strands of the large fan image are roughly the same thickness and width, with similar shading. Both designs share the same overall ornate, intricate aesthetic. (Id.)

Defendants argue, however, that "this Court has already held in its Motion to Dismiss Opinion . . . [that] the designs are not similar." (Def. Opp. (Dkt. No. 53) at 8) (quoting Dismissal Order, 2022 WL 5108902, at *7 ("The Court finds that Defendants have shown that the works reflect several significant differences with respect to elements, arrangement, and overall layout.")) But Defendants' argument and citation are misleading, because the Court's findings regarding "significant differences" were made in the context of whether Klauber had "satisfied the heightened standard of striking similarity." Dismissal Order, 2022 WL 5108902, at

*7.[7]  The Court concluded that Plaintiff had not met this "heightened standard,"[8] and in granting

Defendants' motion to dismiss the Amended Complaint, this Court did "not reach the parties'

arguments regarding whether the designs are substantially similar," id. at *7 n.6, because

Klauber had not adequately pled access in the Amended Complaint.  Id. at *3-5.

   In moving to dismiss the Amended Complaint, Defendants argued that differences

between the two designs are such that the "total concept and overall feel" is substantially

dissimilar.  (Def. MTD Br. (Dkt. No. 29) at 15, 19)  For example, the diamonds in the Lace

Design are "concave (curved inward)" and contain a "scrolling pattern" in the middle, while the

diamonds in Defendants' design are "convex (curved outward), with two leaves on each side,

and without a "scrolling pattern."  (Id. at 16)  Defendants further argued that the fan in the Lace

Design is "wider and shorter," while the fan in Defendants' design is "narrower and taller."  (Id.

at 18)

   Defendants also pointed to a number of differences in how the individual

elements of the designs are arranged, including (1) all the fan images in the Lace Design point

downwards in an "inverted V shape," while the fan images in Defendants' design vary between

---

[7]  The excerpt cited by Defendants appears in the following paragraph in the Dismissal Order:

> Having reviewed the Subject Design and Subject Product, this Court concludes that Klauber
> has not satisfied the heightened standard of striking similarity.  Indeed, Klauber
> acknowledges that there are differences (which it characterizes as "slight") between the
> Subject Design and the Subject Product.  (Pltf. [MTD] Opp. (Dkt. No. 32) at 12-16)  The
> Court finds that Defendants have shown that the works reflect several significant differences
> with respect to elements, arrangement, and overall layout.

Dismissal Order, 2022 WL 5108902, at *7.

[8]  As discussed above, it is a "tall task" to demonstrate "striking similarity," Larball Publ'g Co.,
2023 WL 5050951, at *13, because a plaintiff must allege facts demonstrating that "two works
are so nearly alike that the only reasonable explanation for such a great degree of similarity is
that the later was copied from the first."  Gal, 518 F. Supp. 2d at 537 (citation omitted).

pointing upwards in a "V shape" and downwards in an "inverted V shape" (id. at 17); (2) the smaller fan images in the Lace Design intertwine with each other, while the smaller fan images in Defendants' design intertwine with leaves and a diamond pattern (id. at 17-18); and (3) the Lace Design is fairly uniform across distinct "rows," while the top border of the Defendants' design features a scallop trim (id. at 21).[9]

While the differences cited by Defendant loomed large in the context of conducting the "striking similarity" analysis – given the rigor of that test – the analysis for "substantial similarity" is quite different.[10]  The point of the "substantial similarity" inquiry is not to "'set out to detect the disparities'" between the two designs.  Gaito, 602 F.3d at 66 (quoting Yurman, 262 F.3d at 111).  A court must instead determine – based on a visual comparison of the two designs – whether they are substantially similar.  See id. at 63-64.  Having conducted that visual comparison based on the images provided in the SAC, this Court concludes that the numerous similarities between the two works substantially outweigh the differences cited by Defendants.  See Knitwaves, 71 F.3d at 1004 (finding that "lengthy recitation of differences" that required "considerable ink to describe" did "little to lessen a viewer's overwhelming impression" that the two works at issue were substantially similar); I.C. ex rel. Solovsky v. Delta

---

[9]  In their motion to dismiss papers, Defendants argued that Klauber had "carefully selected and cropped" images of the Lace Design and Defendants' design so as to avoid disclosing certain differences, and submitted their own images of the Lace Design and Defendants' design.  (Def. MTD Br. (Dkt. No. 29) at 17-19)  As discussed above, however, at this stage of the proceedings the Court cannot consider material that falls outside the pleadings.  See Trib. Co. Fraudulent Conv. Litig., 10 F.4th at 175-76.

[10]  As noted above, a plaintiff's burden in establishing "striking similarity" – similarity that precludes the possibility of independent creation – is much higher than the burden to establish substantial similarity.  See Greene v. Warner Music Grp., No. 23 Civ. 1555 (KPF), 2024 WL 3045966, at *13 (S.D.N.Y. June 18, 2024) (describing "striking similarity" as a "comparatively higher bar" than "substantial similarity").

Galil USA, 135 F. Supp. 3d 196, 216 (S.D.N.Y. 2015) (finding the "overall concept and feel" of the two designs "sufficiently similar for purposes of surviving the motion to dismiss," despite minor differences in size and shape of individual elements); Klauber Bros., Inc. v. WW, LLC, No. 18-CV-4696 (JPO), 2019 WL 2754623, at *5-6 (S.D.N.Y. July 2, 2019) ("viewing the designs holistically," they are "substantially similar," despite differences in the number of "veins" in leaf design, arrangement of leaf design, border design, and color).

Moreover, in making the substantial similarity determination, this Court must "giv[e] due weight . . . to the scrutiny that observers would give to the patterns as used." Hamil Am., 193 F.3d at 102 (emphasis in original). Here, the Lace Design and Defendants' design is used in women's clothing. (See SAC (Dkt. No. 51-1) ¶¶ 19-20 (alleging that the Lace Design is used in "garments" sold to "numerous parties in the retail and apparel industries"); id. ¶ 21 (alleging that Defendants' design is used in "garment[s]" and sold to "retailer[s]")  Given this intended use, both designs will likely be "viewed from a distance," and any "slight differences" in the individual elements – such as the "scrolling pattern" or the outward curves of the small diamonds cited by Defendants (see Def. MTD Br. (Dkt. No. 29) at 16) – would "fade away." Hamil Am., 193 F.3d at 102 (considering two fabric patterns intended for use in clothing).

The Court concludes that the SAC plausibly alleges that Defendants wrongfully copied the Lace Design, and that Plaintiff has stated a claim for direct infringement.

**B.**    **Indirect Copyright Infringement**

Because the SAC adequately alleges direct infringement, the Court must consider whether the SAC states a claim for indirect infringement. See Matthew Bender & Co. v. W. Pub. Co., 158 F.3d 693, 706 (2d Cir. 1998) ("For a defendant to be held contributorily or vicariously liable, a direct infringement must have occurred.") (citation omitted).

To plead contributory infringement, a complaint must allege facts showing that a defendant, "'with knowledge of the infringing activity, induce[d], cause[d] or materially contribute[d] to the infringing conduct of another.'" EMI Christian Music Grp. Inc. v. MP3 Tunes LLC, 844 F.3d 79, 99-100 (2d Cir. 2016) (quoting Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971)).

To plead vicarious infringement, a complaint must allege facts showing that a defendant "had the 'right and ability to supervise [that] coalesce[d] with an obvious and direct financial interest in the exploitation of copyrighted materials." Id. at 99 (quoting Softel, Inc. v. Dragon Medical & Sci. Commc'ns, Inc., 118 F.3d 955, 971 (2d Cir. 1997)).

Under either theory of indirect infringement, a complaint must identify a primary infringer as well as an alleged indirect infringer who contributed to or profited from the unlawful copying.

As discussed above, the SAC's theory of direct infringement is that "Badgley Mischka, Saks, and others, including certain Doe defendants, created, sold, [and] manufactured" garments bearing the Lace Design. (SAC (Dkt. No. 51-1) ¶ 23)  In alleging indirect infringement, the SAC further asserts that the "Defendants were involved in a network of infringement with . . . direct infringers" by "sourcing of materials for and manufacture of the [infringing clothing]," and "supervise[d] the infringing conduct." (Id. ¶¶ 39-40, 42)  The SAC does "not indicate which Defendants are responsible as primary or [indirect] infringers," or the "roles that [each] Defendant[] played." URBN, 2022 WL 1539905, at *10 (dismissing substantially identical indirect infringement claims as "vague" and "insufficient").  As this Court explained in the Dismissal Order, Klauber's conclusory allegations – which lump named Defendants together with unidentified Doe defendants, and which do not provide an adequate

factual foundation explaining how the Defendants committed indirect infringement – are not sufficient to allege indirect infringement claims. See Dismissal Order, 2022 WL 5108902, at *8. The SAC does not cure the defects cited in the Dismissal Order.

Indeed, the SAC's allegations regarding indirect infringement closely resemble those that other courts have rejected as "threadbare" and "conclusory." See, e.g., URBN, 2022 WL 1539905, at *10-11 (dismissing indirect infringement claims premised on a similar "'threadbare, conclusory recital of the elements of [indirect infringement] claim[s]'") (quoting Iqbal, 556 U.S. at 678); Klauber Bros., Inc. v. Jenny Yoo Collection, Inc., No. 16 Civ. 9260 (LLS), 2017 WL 4082483, at *6 (S.D.N.Y. July 18, 2017) (same). The SAC does not, for example, plead facts demonstrating that Saks acted "with knowledge" that manufacturers were providing infringing fabric, that Saks had the "ability to supervise" the manufacturers during the fabric creation process, or that Saks acted in concert with Badgley Mischka to infringe upon Klauber's rights. See EMI, 844 F.3d at 99-100 (citation omitted); see Wolk v. Kodak Imaging Network, Inc., 840 F. Supp. 2d 724, 751 (S.D.N.Y. 2012), aff'd sub nom. Wolk v. Photobucket.com, Inc., 569 F. App'x 51 (2d Cir. 2014) (dismissing contributory and vicarious infringement claim where complaint did not allege "actual or constructive knowledge of specific and identifiable infringements of the [disputed] items") (citation omitted).

In sum, the SAC does not state a claim for contributory or vicarious infringement, and leave to amend will be denied as to indirect infringement. See Ruotolo, 514 F.3d at 191.

## **CONCLUSION**

For the reasons stated above, Plaintiff Klauber is granted leave to file a Second Amended Complaint consistent with the rulings in this Memorandum Opinion & Order. The Second Amended Complaint is to be filed by **October 17, 2024**. The Clerk of Court is directed to terminate the motion for leave to amend (Dkt. No. 49).

The Court will conduct a case management conference on **October 25, 2024, at 10:30 a.m.**, in Courtroom 705, U.S. Courthouse, 40 Foley Square, New York, New York.  The parties will submit a joint letter and proposed case management plan in accordance with this Court's Individual Rules one week in advance of the case management conference.

Dated: New York, New York
       October 10, 2024

                    SO ORDERED.

                    _____
                    Paul G. Gardephe
                    United States District Judge